KNAFFLE *et al. v.* KNOXVILLE BANKING & TRUST Co.

(*Knoxville.* September Term, 1913.)

1. **BANKS AND BANKING.** Set-off by depositor.

Although the Negotiable Instruments Law (Laws 1899, ch. 94) declares that the maker shall be primarily liable for the payment of a negotiable instrument, nevertheless, where one who signed as maker seeks to set off his deposit in an insolvent bank against his liability to the bank on the note, he will not be treated as the real party in interest, where he signed for the benefit of his comaker in order to enable him to negotiable the instrument. (*Post, pp.* 183, 184.)

Acts cited and construed: Acts 1899, ch. 94.

Cases cited and approved: Building, etc., Co. v. Northern Bank, 206 N. Y., 400; Winne v. Winne, 166 N. Y., 263, 271.

2. **SET-OFF AND COUNTERCLAIM.** Equitable set-off. Nature.

The remedy of equitable set-off may be enforced independently of the statutes, where from the nature of the claim or the situation of the parties it is impossible to obtain justice by plea or cross-action. (Post, p. 184.)

Cases cited and approved: Wilson v. Exchange Bank, 122 Ga., 495; Corbett v. Hughes, 75 Iowa, 282; Lindsay v. Jackson, 2 Paige (N. Y.), 581; Becker v. Northway, 44 Minn., 61; Scholz v. Steiner, 100 Ala., 148; Graham v. Middleby, 213 Mass., 437; Nolan Bros. Lumber Co. v. Dudley Lumber Co., 128 Tenn., 11.

3. **BANKS AND BANKING.** Equitable set-off by depositor.

Where a depositor in a bank signed a note to the bank as comaker, merely for the accommodation of the real maker and to enable him to negotiate it, the depositor will not, upon the insolvency of the bank, be permitted to set off against his liability on the note his rights against the bank based upon his deposit therein; it appearing that the real maker

Knaffle v. Trust Co.

was not yet insolvent and that the bank had not sought to subject the depositor to liability, for to permit him such a right would work injustice by means of an equitable set-off. (*Post, p.* 186.)

Cases cited and approved: Nashville Trust Co. v. Bank, 91 Tenn., 336, 347; In re Middle District Bank, 9 Con. (N. Y.), 414; Davis v. Industrial Mfg. Co., 114 N. C., 321; Edmondson v. Thomasson, 112 Va., 326; New Farmers' Bank v. Young, 100 Ky., 683.

**4. BANKS AND BANKING.   Equitable set-off by depositor.**

Upon the insolvency of a bank, unmatured claims against it will be treated as matured, for the purpose of enabling the holder to obtain the right of equitable set-off. (*Post, p.* 187.)

Case cited and disapproved: Clark v. Sullivan, 2 N. D., 103.

---

## FROM KNOX.

---

Appeal from Chancery Court, Knox County.—WILL D. WRIGHT, Chancellor.

POWERS & THORNBURGH, for appellants.

J. H. FRANTZ, for petitioner Holloway.

WRIGHT & JONES, D. C. WEBB, and HUGH M. TATE, for receiver.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

Under an intervening petition filed in this, a proceeding to wind up defendant bank as an insolvent corporation, it appears that, at the date of insolvency found, a note to the bank as payee, to mature approxi-

mately three months thereafter, had been executed by McNichols Art Shop and Mrs. J. A. McNichols, whose signatures were appended as if both were makers, and that the first (the trade name of R. T. P. McNichols) received the proceeds; the second signer becoming surety when the bank required a second name on the paper. Mrs. J. A. McNichols had deposits in the bank that aggregated a sum greater than the amount of the note.

The petition was filed by both the McNicholses, son and mother, seeking to have her deposits set off in payment of the note. The son, principal obligor on the note, is not alleged to be insolvent, and is in fact solvent. The receiver of the bank answered, resisting the grant of relief; and the chancellor and court of civil appeals have held with the receiver and denied the claim of set-off.

The first insistence is that both of the signers of the note are, under the Negotiable Instruments Act (Acts 1899, ch. 94), to be deemed primarily liable so far as the bank is concerned, and no one of them a surety.

In *Building, etc., Co.* v. *Northern Bank,* 206 N. Y., 400, 99 N. E., 1044, where it appeared that two persons, solely for the accommodation of plaintiff company, had as makers executed their note to it as payee, which note it had indorsed to defendant bank, it was held that such indorser would be treated as the one "primarily liable" on the instrument, in testing its right to equitable set-off against its deposit in the bank in insolvency proceedings. The court said:

"It nowhere appears from the Negotiable Instruments Law, or from anything that can be considered in determining the intention of the legislature, that said sections 3 and 55 [in relation to primary liability] were intended to prevent the courts from determining in equity all questions between an insolvent holder of a note and the one primarily liable for the indebtedness on the instrument as a matter of fact, whether maker or indorser. . . .

"If we assume that in an action at law the makers of the note must arbitrarily be treated as primarily liable thereon, and the plaintiff as secondarily liable thereon, it does not prevent the court in an action in equity from determining and enforcing the rights of the parties as the same are found as a matter of fact. *Winne* v. *Winne,* 166 N. Y., 263, 271 [59 N. E., 832, 82 Am. St. Rep., 647.]."

In this view of the Negotiable Instruments Act we concur; and, on the proof, Mrs. J. A. McNichols is to be treated, not as comaker, but as a surety secondarily liable, for the purpose of testing her right of equitable set-off.

The point yet more seriously contested is the remedy of the surety to have equitably offset her deposits against the note. She has not been sued on the note; and we have not, therefore, for consideration how far she could in such an action successfully plead in set-off this demand, as to which see *Wilson* v. *Exchange Bank,* 122 Ga., 495, 50 S. E., 357, 69 L. R. A., 97, 2 Ann. Cas., 597, and *Corbett* v. *Hughes,* 75 Iowa, 282,

39 N. W., 500 (which seem to make the matter turn on whether or not the demand grew out of the transaction in which the note was executed).

The remedy of equitable set-off may be enforced independently of the statutes governing set-off, where from the nature of the claim, or from the situation of the parties, it is impossible to obtain justice by plea or cross-action. *Lindsay* v. *Jackson,* 2 Paige (N. Y.), 581; *Becker* v. *Northway,* 44 Minn., 61, 64 N. W., 210, 20 Am. St. Rep., 543; *Scholze* v. *Steiner,* 100 Ala., 148, 14 South., 552. But there will be a grant of the remedy only for the purpose of securing an equitable result, and not where its allowance would work on injustice to others having equal equities. *Graham* v. *Middleby,* 213 Mass., 437, 100 N. E., 750, 43 L. R. A. (N. S.), 977, 981; 34 Cyc., 726, and cases cited.

In *Nolan Bros. Lumber Co.* v. *Dudley Lumber Co.,* 128 Tenn., 11, 156 S. W., 465, the nature of equitable set-off was considered, and it was there held that where a defendant sued was an indorser of a note executed by the plaintiff's assignor, as maker, and had been forced to pay same, an assignment (prior to such payment) of a debt due by account from defendant to the assignor did not preclude defendant from establishing an equitable set-off; it appearing that the assignor was insolvent at the time he executed the note and when he assigned the account. This case is now cited as authority in behalf of the petitioning surety. That case was one that dealt with the rights of an indorser as against his principal, and the equity that supported

the set-off was found in the *insolvency of his own principal,* to whom the indorser stood as potential creditor at the time the account sued on was assigned, and the discussion and marshaling of authorities related almost wholly to a phase other than the one here presented—the *status* of a surety who on assignment date had not paid his principal's debt.

In the case at bar the surety's principal is solvent, and the effort is to have the *insolvency of the bank* constitute the equity in support of the remedy sought.

In the cited case, the account sought to be met by set-off was the principal's against the indorser, while in the case at bar the effort is that of a surety to set off her own demand against a debt that is primarily not hers, but the real debt of her principal, the son. It is manifest, on analysis, that the *Nolan Lumber Co. Case* is not authority for petitioner's contention, and could only be, by analogy, were it made to appear that the surety's principal was insolvent.

The bank's insolvency in instances would be reason for, and sustain, an equitable set-off; for example, in accelerating the maturity of demands, for equity's purposes in set-off. *Nashville Trust Co.* v. *Bank,* 91 Tenn., 336, 347, 18 S. W., 822, 15 L. R. A., 710.

The question here presented for determination, therefore, recurs: Is the surety on a note held by the receiver of an insolvent bank entitled to have set off against the same the amount of an individual deposit due the surety by the bank, when the bank is not suing, and the maker and primary obligor is solvent?

Chancellor Walworth in the early case of *In re Middle District Bank,* 9 Cow. (N. Y.), 414, note, said: "If the real debtor is unable to pay, and the receiver is compelled to resort to the indorser, who is eventually to be the loser, he has the same equitable claim to offset bills which he had at the time the bank stopped payment. But no such offset should be allowed to an indorser where he is indemnified by the real debtor, or when the latter can be compelled to pay."

In *Davis* v. *Industrial Manufacturing Co.,* 114 N. C., 321, 19 S. E., 371, 23 L. R. A., 322, it was said: "If it is true that the principal debtor, the Industrial Manufacturing Company, is wholly insolvent, and that the receiver will not be able to collect anything on this note from it, then the true debt of the defendant West [surety] to the bank is one-eighth part of the whole amount, and also his proper proportion of what his cosureties fail to pay; . . . and we hold that the receiver should be directed to adjust and settle the said true indebtedness of the defendant West by setting off the same against his aforesaid claims against the bank"—and the court proceeded to approve the ruling of Chancellor Walworth, quoted above.

In *Edmondson* v. *Thomasson,* 112 Va., 326, 71 S. E., 536, 26 Ann. Cas., 1301, it was said: "The partnership of Thomasson & Stembridge was the principal debtor. If Thomasson, as indorser, pays the debt in any way whatever by the application of the set-off in accordance with his petition or otherwise, he can indemnify himself by resort to the assets of the firm,

if it be solvent, or to the extent at least of any dividends to which he might be entitled upon a distribution of its assets. He would then be precisely within the terms of the principle stated by Chancellor Walworth. If, however, the partnership, which is the real debtor, be unable to pay, and the receivers are compelled to resort to the indorser, who individually would be the loser, he will be plainly entitled to set off his claim against the bank in satisfaction of any demand made by the receivers upon him as indorser''—and the petition for set-off was disallowed; the maker and real debtor being held to be solvent.

The same rule was announced in *New Farmers' Bank* v. *Young,* 100 Ky., 683, 39 S. W., 46.

It is apparent that, if the relief prayed by petitioning surety were granted, an inequitable result would be worked, against the rule above referred to. She would collect her entire claim through a process of obtaining credit on the note for an equivalent amount of her deposits; and, her principal being solvent, she would be in a position to realize from him the full amount thus paid as his surety. She would do this—not be paying her own debt to the bank, but, in contemplation of equity, the debt of another.

The rule laid down in the *Nolan Lumber Co. Case* and kindred authorities was meant to shield from loss indorsers and sureties by forcing their principals, the real debtors, to bear their own just burdens; not, as is asked here, to award the surety at her instance and prayer an affirmative advantage. In holding to the

Knaffle v. Trust Co.

contrary the supreme court of North Dakota, in *Clark v. Sullivan*, 2 N. D., 103, 49 N. W., 416, 13 L. R. A., 233, argued that "one of the very elements of law is that a surety is a favorite of a court of equity." So he is, for protection, not profit; certainly not to the extent of having awarded him by indirection a special privilege of preference over other creditors of the insolvent bank.

Let us assume that there had, in addition to the surety, been an indorser on the note, or an indorser for the accommodation of the surety, each with a deposit in the bank equal in amount to the note. How, and in what order, would the court award to them the privilege, evidently to be sought, of satisfying the debt with advantages consequent?

We deem the true rule to be that announced in the cases quoted, and that the petition for equitable set-off should be denied. The court of civil appeals reached a correct result, but on another line of reasoning. The decree of that court is therefore affirmed.