KARDON v. WILLING.

No. 9649.

District Court, E. D. Pennsylvania.

Sept. 13, 1937.

Simon Pearl and Henry Arronson, both of Philadelphia, Pa., for plaintiff.

Samuel E. Kratzok, of Philadelphia, Pa., for defendant.

Sur Pleadings and Proofs.

MARIS, District Judge.

This is a bill in equity brought against the receiver of an insolvent national bank to compel the allowance of a set-off. From the evidence I make the following special

### Findings of Fact

The Sixth National Bank of Philadelphia, a national banking association (hereinafter called the Bank), on February 28, 1933, at 3:30 o'clock p. m., suspended ordinary banking operations and never thereafter resumed business in normal course. On March 14, 1933, the Comptroller of the Currency appointed Norman C. Ives as conservator of the Bank, and on September 29, 1934, the Comptroller appointed Leonard B. Botfield as receiver. Upon his death Joseph K. Willing, the defendant, was appointed receiver on July 3, 1936.

On February 16, 1928, plaintiff opened savings fund account No. 13,982 in the bank. On the signature card the account was described as "Robert Kardon, M. Kardon Trustee," and on the passbook as "M. Kardon, in trust for Robert Kardon." Robert Kardon is the minor son of the plaintiff.

When he opened this account, plaintiff deposited therein the sum of $7,179 of his own money and thereafter deposited additional sums from his own funds. Under the rules of the bank plaintiff alone was entitled to make withdrawals from the account. His intention in opening the account was to create a tentative or revocable trust in favor of his son, reserving full power at any time to withdraw funds from the trust for his own purposes. From the time of the opening of the account until the closing of the Bank, he exercised complete control over the account, retaining the passbook in his possession and withdrawing from time to time numerous sums of money which he devoted to his own purposes.

At the time of the closing of the Bank, the balance on deposit in this savings account was $11,268.75. At the same time the plaintiff had a balance in a checking account in the Bank in his own individual name amounting to $895.39.

At the time of the closing of the Bank, plaintiff was indebted to it in the sum of $7,603.20 by reason of his indorsement of various notes held by the Bank and drawn by various persons on the dates and in the amounts appearing in the schedule annexed to the bill of complaint.

The makers of certain of the said notes aggregating $7,238.20 were and are financially embarrassed and unable to pay and discharge their indebtedness, and plaintiff, if called upon to pay said notes by reason of his indorsement, will not have any recourse against the makers.

The plaintiff made no demand for the set-off of the said savings account against his indebtedness as indorser until some time after the closing of the Bank.

## Discussion.

Plaintiff seeks in this case to compel the defendant receiver to set off a sufficient amount of the balance in the savings account which he opened as trustee for his son against the notes upon which he is liable as indorser to satisfy those notes in full. His right to this relief he bases upon the fact, as he alleges, that the savings account in question was his own individual property and not a trust fund for his son. This, however, is strongly denied by the defendant. The underlying question in the case thus arises.

There is no doubt as to the right of a depositor in a closed bank to set off the amount of his deposit against his liability as indorser upon a note held by the bank, provided the maker of the note is insolvent. Shannon v. Sutherland (C.C. A.) 74 F.(2d) 530, 97 A.L.R. 583. It is equally well settled that it is only his own deposit or claim which he may thus set off, and not that of any other person. In every case the question is: Whose money or claim is proposed to be used as a set-off? Gordon, Secretary of Banking, v. Union Trust Co., 308 Pa. 493, 162 A. 293. This question is to be determined at the moment of insolvency of the bank by the state of things then existing, not by any conditions thereafter arising or by any subsequent action taken by any party. First National Bank of Indianola, Iowa, v. Malone (C.C. A.) 76 F.(2d) 251; Dakin v. Bayly, 290 U.S. 143, 54 S.Ct. 113, 78 L.Ed. 229, 90 A.L.R. 999. For this purpose the Bank is to be deemed, in the absence of evidence to the contrary, to have become insolvent on the day it ceased to make payments in regular course and closed never to reopen. Willing v. Argosy Building & Loan Ass'n (D.C.) 19 F.Supp. 353. The question to be here determined is thus narrowed to this: Was the savings account balance of $11,268.75 on February 28, 1933, the individual property of the plaintiff, or did it constitute a trust fund of which his son Robert Kardon was beneficiary?

It is well settled that a deposit by one person of his own money, in his own name as trustee for another, standing alone, establishes a tentative trust which is revocable at will until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary. Matter of Totten, 179 N.Y. 112, 71 N.E. 748, 70 L.R.A. 711, 1 Ann.Cas. 900; In re Scanlon's Estate, 313 Pa. 424, 169 A. 106. The rule is thus stated in the Restatement of the Law of Trusts, § 58: "Where a person makes a deposit in a savings account in a bank in his own name as trustee for another person intending to reserve a power to withdraw the whole or any part of the deposit at any time during his lifetime and to use as his own whatever he may withdraw, or otherwise to revoke the trust, the intended trust is enforceable by the beneficiary upon the death of the depositor as to any part remaining on deposit on his death if he has not revoked the trust."

Such a trust is a valid trust, although revocable, and in order to terminate it the depositor must withdraw the money or by some other act or declaration decisively show his intention to revoke. It may doubtless also be revoked at the instance of the depositor's creditors, but until thus revoked either by the depositor or his creditors it remains in force and the beneficiary retains his beneficial interest therein.

It is true that it has been held that a depositor may offer evidence to show that it was not his intention, in making such a deposit, to create even a tentative trust. In fact, such evidence was offered by the plaintiff here. His evidence was not convincing, however, and I am satisfied that when he opened the savings account here in question, he intended to create a revocable trust in favor of his son. In other words, while he intended to reserve the right at any time to withdraw all or any part of the deposit for his own purposes, he also intended that the balance remaining in the account should be and remain impressed with a trust in favor of his son until by withdrawal or some other positive act or declaration he evidenced his intention of terminating his son's interest. If this were not so, his use of his son's name was utterly meaningless. At the time the bank closed, however, he had neither withdrawn nor in any other manner evidenced his intention to extinguish his son's interest in the balance of $11,268.75. It necessarily follows that on February 28, 1933, this balance was impressed with a trust in favor of his son Robert Kardon. It was, therefore, not the plaintiff's money at that time, and consequently was not available to him as a set-off against his indebtedness.

 It may be admitted, as plaintiff argues, that his action in claiming a set-off amounted to a revocation of the trust. His demand for this action, however, was not made until some time after the closing of the Bank. Consequently it can have no bearing on the question before us. That question, as I have shown, must be determined by the status at the moment of closing. Up to that moment there had been no revocation. Furthermore, it must be borne in mind that a set-off of this character can only be allowed where special equity exists and where the equity of third persons will not be prejudiced. Gray v. School Dist. of Borough of Brownsville (C.C.A.) 67 F.(2d) 141; First Nat. Bank of Indianola, Iowa, v. Malone, supra. Hence the rights of all the other depositors of the bank must be considered. It would be obviously inequitable to them to permit the plaintiff, who while the bank was open set up a tentative trust in favor of his son, now to assert that such a trust did not exist. It would be equally inequitable to permit him retroactively to change the status of the savings account after their rights had attached. Prior to the closing the bank, plaintiff evidently desired, for reasons he deemed sufficient, to keep the savings fund balance in trust for his son at least until he needed to use the money. This was his voluntary act, and to me it speaks more loudly than volumes of testimony given after the bank closed when it became very much to his interest to claim ownership of the fund. I, therefore, place little credence in the testimony of the plaintiff as to his intention.

The evidence indicated that a number of the notes upon which the plaintiff was indorser had been renewed after the closing of the bank by agreement with the receiver. The latter raised a question as to the plaintiff's right to a set-off in view of the fact that the notes held when the bank closed have been superseded by these renewals. In the view I have taken of the case, however, this question need not be considered.

### Conclusions of Law.

By opening the savings account in question, plaintiff created a tentative trust, which he had power to revoke in whole or in part at any time by withdrawal of the funds or otherwise; but so long as the trust remained unrevoked the balance in the account was subject thereto, and Robert Kardon therefore had an interest therein.

Robert Kardon had an interest as cestui que trust in the balance of $11,268.75 in the savings account at the time the bank closed.

The right of set-off must be determined by the state of things existing at the moment of insolvency of the bank, not by conditions thereafter arising or by any subsequent action taken by any party.

The plaintiff is not entitled to set off the balance in said savings account against his indebtedness to the bank.

The bill should be dismissed.

A decree dismissing the bill may be entered.